IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

EDWARD RICKENBACH, JACK
MCTAGUE as executor of the
estate of James McTague, and
HATTIE MCTAGUE by and through
her attorney, on behalf of
themselves and all others
similarly situated,

          Plaintiffs,

    v.

WELLS FARGO BANK, N.A., et
al.,

          Defendants.

HON. JEROME B. SIMANDLE

Civil No. 08-2687 (JBS/KMW)

**OPINION**

APPEARANCES:

Lewis G. Adler, Esq.
LAW OFFICE OF LEWIS ADLER
26 Newton Avenue
Woodbury, NJ 08096
    Attorneys for Plaintiffs Edward Rickenbach, Jack McTague and
    Hattie McTague

Diane A. Bettino, Esq.
Mark S. Melodia, Esq.
REED SMITH, LLP
Princeton Forrestal Village
136 Main Street
Suite 250
Princeton, NJ 08540
    Attorneys for Defendants Wells Fargo, N.A. and Mortgage
    Electronic Registration Systems, Inc.

Andrew Christopher Sayles, Esq.
CONNELL FOLEY, LLP
85 Livingston Avenue
Roseland, NJ 07068
    Attorney for Defendant Zucker, Goldberg, and Ackerman

**SIMANDLE,** District Judge:

## I.   INTRODUCTION

This matter is before the Court on two motions to dismiss, one brought by the defendants Wells Fargo, N.A. ("Defendant Wells") and Mortgage Electronic Registration Systems, Inc. ("Defendant MERS") [Docket Item 20], and the other by the defendant law firm Zucker, Goldberg, and Ackerman ("Defendant Zucker") [Docket Item 21].  Together, Defendants seek dismissal of Plaintiffs' myriad claims under New Jersey law arising out of allegedly excessive and illegal mortgage processing fees.  This opinion will address the voluntary payment rule, the limited reach of the 16-year statute of limitations for documents under seal pursuant to N.J. Stat. Ann. § 2A:14-4, whether a private right of action arises under the Fair Foreclosure Act and New Jersey Court Rules pertaining to attorney's fees and foreclosure fees; further, the opinion will consider whether various claims against the defendant law firm are barred by the litigation privilege.

The Court has addressed the many arguments raised by all sides and will grant Defendant Zucker's motion in full and Defendants Wells' and MERS' motion in part, noting that while potentially meritorious, several of Defendants' arguments cannot be resolved in a motion to dismiss which must be confined to the pleadings.  As a result of this opinion, Plaintiff Rickenbach's

2

contract claim against Defendants Wells and MERS survives
dismissal, while Plaintiffs McTague may continue to assert claims
for breach of contract, negligence, breach of an implied duty of
good faith and fair dealing, and violations of the New Jersey
Consumer Fraud Act and the New Jersey Truth-In-Consumer Contract,
Warranty, and Notice Act against Defendants Wells and MERS only.

## II. BACKGROUND

### A. Factual Allegations

This matter being before the Court on a motion to dismiss,
the following factual recital takes the allegations in
Plaintiffs' Amended Complaint as true and construes them in the
light most favorable to Plaintiffs.

### 1. <u>Plaintiff Edward Rickenbach</u>

Plaintiff Edward Rickenbach ("Plaintiff Rickenbach")
executed the mortgage and note at issue in this case under seal
on June 26, 1996. (Am. Compl. ¶ 15.)  On November 11, 2001,
Defendant Zucker filed a foreclosure proceeding on behalf of
Defendant Wells against Plaintiff Rickenbach. (<u>Id.</u> ¶ 16.)  In
response, Plaintiff Rickenbach sought and received reinstatement
of his mortgage, which occurred on or about December 26, 2001.
(<u>Id.</u> ¶¶ 17-18.)  The foreclosure action and <u>lis</u> <u>pendens</u> were
dismissed. (<u>Id.</u> ¶ 19.)  Plaintiff Rickenbach then requested a
statement of the amount needed to satisfy his mortgage along with
any fees ("payoff statement"), so that he could refinance his

home with a new mortgage company.  (Id. ¶ 20.)  According to the Amended Complaint, "on or about May 30, 2002," Plaintiff Rickenbach paid his remaining mortgage in full.  (Id. ¶ 21.)  The check for that payment is dated April 9, 2002.  (Dzura Certification, Ex. 2.)

According to Plaintiffs, the reinstatement and ultimate satisfaction of Plaintiff Rickenbach's mortgage "were improperly calculated as [] Defendant Wells included charges which were in excess of the amounts allowed either pursuant to the terms of the note and mortgage or New Jersey law."  (Id. ¶ 22.)  Specifically, Plaintiff Rickenbach alleges that the fee charged to him included attorneys fees and costs for an entire foreclosure proceeding, despite the termination of foreclosure proceedings.  (Id. ¶ 33(a).)

    2.  Plaintiffs McTague

On June 6, 1976, Plaintiff Hattie McTague and her late husband James McTague, whose estate is now represented by Jack McTague, (collectively, "Plaintiffs McTague") executed their mortgage and note under seal.  (Id. ¶ 23.)  On or about March, 2005, Defendant Zucker filed a foreclosure proceeding on behalf of Defendants MERS and Wells, the servicer of the loan for Defendant MERS, against Plaintiffs McTague.  (Id. ¶¶ 25-26.)  After receiving the foreclosure complaint, counsel for Plaintiffs McTague requested a payoff statement for the mortgage.  (Id. ¶

4

27.)  According to the Amended Complaint, Defendant Zucker, on behalf of Defendants MERS and Wells, provided Plaintiffs McTague with a statement dated June 7, 2007 in the amount of $7,061.28, of which $910.00 was for attorney fees and $1,009.00 was for costs.  (Id. ¶¶ 28, 30.)  The June 7, 2007 date appears to be incorrect, however, because attached to the Amended Complaint is the actual payoff letter from Defendant Zucker, and it is dated March 11, 2005.[1]  (Am. Compl. Ex. A.)  That letter explains "the amounts required to reinstate and payoff our client's mortgage and for dismissal of the foreclosure action."  (Id.)  Defendant Wells participated in the preparation of that statement.  (Am. Compl. ¶ 29.)  On or about April 21, 2005, Plaintiffs McTague paid the sums demanded in full and Defendants dismissed the foreclosure action and discharged the mortgage.  (Id. ¶ 31-32.)  Plaintiffs McTague allege that under New Jersey Court Rules, Defendants could charge no more than $177.13 for attorney fees. (Id. ¶ 33(a).)

---

[1] In addition, the actual payoff statement includes slightly different numbers, such that the total was $9,831.42, but the portions for attorney fees and costs are correctly listed in the Amended Complaint ($1009.00 and $910.00, respectively).  (Am. Compl. Ex. A.)  The Court notes that, even on a motion to dismiss, it is appropriate to rely on exhibits attached to a complaint.  Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

3.   <u>Defendants Allegedly Wrongful Conduct Towards
Defaulting Borrowers of Residential Mortgages</u>

Plaintiffs accuse Defendants, generally, of having "engaged
in a uniform scheme and course of conduct to inflate their
profits by charging and collecting various fees not authorized by
the loan documents or applicable law" thereby "overcharging
defaulting borrowers of residential mortgages."  (<u>Id.</u> ¶ 33.)  The
Amended Complaint alleges that Defendants overcharge defaulting
borrowers of residential mortgages by charging:

(a)  attorneys fees and costs in excess of those actually
     incurred and beyond the amount permitted by New Jersey
     Court Rules;

(b)  excessive costs in violation of statute and New Jersey
     Court Rules;

(c)  recording fees in excess of the actual fee;

(d)  service of process fees beyond what is permissible
     under statute and Court Rules; and

(e)  impermissible fees for obtaining a certificate of
     regularity.

(<u>Id.</u> ¶ 33.)  In addition, the Amended Complaint alleges that
Defendants overcharged the putative class by (1) failing to
credit deposits made toward sheriff's commissions, and (2)
continuing to charge the contract interest rate when the judgment
interest rate should be used.  (<u>Id.</u> ¶ 33(f).)

**B.    Procedural History**

On May 30, 2008, Plaintiffs brought this putative class action against Defendant Wells.  On August 15, 2008, Plaintiffs filed their Amended Complaint against Defendant Wells, along with Defendants MERS and Zucker.  The Amended Complaint sets forth the following claims: breach of contract against Defendant Wells (Count I); negligence against all Defendants (Count II); breach of duty of good faith and fair dealing against all Defendants (Count III); unjust enrichment against all Defendants (Court IV); unfair and deceptive assessment and collection of fees against Defendants Wells and MERS (Count V); violations of the Fair Foreclosure Act against Defendants Wells and MERS (Count VI); violations of the New Jersey State Court Rules against Defendants Wells and MERS (Count VII); violations of the New Jersey Consumer Fraud Act ("NJCFA") against Defendants Wells and MERS (Count VIII); and violations of the New Jersey Truth-In-Consumer Contract, Warranty, and Notice Act against Defendants Wells and MERS (Count IX).  Plaintiffs also named various John Doe parties to the action (Count X).[2]

On November 17, 2008, Defendant Zucker and Defendants Wells and MERS filed their separate motions to dismiss, along with exhibits [Docket Items 20 & 21].  On January 2, 2009, Plaintiffs

---

[2] Though listed among the various other causes of action, Count X is not a cause of action, but instead lists other potential unnamed defendants to Plaintiffs' suit.

opposed each motion separately [Docket Items 24 & 25].

Defendants Wells and MERS replied on January 12, 2009 and

Defendant Zucker replied on January 26, 2009 [Docket Items 26 &

26].  On February 27, 2009, after receiving permission from the

Court, Plaintiffs submitted a sur-reply and on March 6, 2009, all

defendants responded to Plaintiffs' sur-reply [Docket Items 30,

31, 32 & 33].   Through Plaintiffs' sur-reply Plaintiffs

voluntarily dismissed their claims of unjust enrichment (Count

IV) [Docket Item 30].

**III. DISCUSSION**

    **A.   Standard of Review**

On a Rule 12(b)(6) motion to dismiss for failure to state a

claim for which relief may be granted, the Court must "accept all

factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be

entitled to relief."  Phillips v. County of Allegheny, 515 F.3d

224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd.,

292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will

not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).  "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

**B.   Defendants Wells' and MERS's Motion to Dismiss**

Defendants Wells and MERS challenge Plaintiffs' Amended Complaint on numerous grounds.  They maintain that Plaintiffs' Amended Complaint cannot state a claim because of the voluntary payment rule, and that Plaintiffs McTague have not suffered any injury and so their action must be dismissed.  The Court, however, cannot resolve arguments based upon unpleaded facts on a motion to dismiss.  Wells and MERS ask the Court to dismiss Plaintiff Rickenbach's claims for falling outside the statute of limitations, and the Court will dismiss all but Rickenbach's contract claim as untimely.  Defendants also attack specific claims as insufficient to survive a Rule 12(b)(6) motion.  The Court agrees that Plaintiffs McTague cannot bring a private action under the Fair Foreclosure Act and New Jersey Court Rules, nor can they state a claim for "unfair and deceptive assessment and collection of fees," and so will dismiss those counts.  The remaining claims against Defendants Wells and MERS by Plaintiffs

McTague will survive this motion to dismiss.

    1.   Voluntary Payment Rule

Wells and MERS suggest that dismissal is required because Plaintiffs voluntarily paid the allegedly improper fees.  The common law voluntary payment rule "provides that 'where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible against him, he cannot recover it back.'"  Matter of New Jersey State Bd. of Dentistry, 423 A.2d 640, 643 (N.J. 1980) (quoting City of Camden v. Green, 25 A. 357, 358 (N.J. 1892)).  Without determining whether the voluntary payment rule is applicable to any or all of Plaintiffs' claims against Defendants,[3] the Court finds that the rule raises questions of fact that cannot be resolved at this stage.  This Court has previously determined that application of the voluntary payment rule cannot be resolved on a motion to dismiss, where the complaint does not establish whether the plaintiff's payment was truly voluntary and made without mistake of fact.  Carducci v. Aetna U.S. Healthcare, 247

---

    [3] The Court observes, without deciding, that the New Jersey Consumer Fraud Act appears to conflict with the common law voluntary payment rule, for the CFA permits suit based solely on regulatory violations, even in the absence of fraud or duress. See Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 748 (N.J. 2009) ("[I]ntent is not an element if the [CFA] claim is based on a defendant's alleged violation of a regulation, because 'the regulations impose strict liability for such violations.'") (quoting Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994)).

F. Supp. 2d 596, 619 (D.N.J. 2003), <u>overturned on other grounds</u>
<u>by</u> <u>Levine v. United Healthcare Corp.</u>, 402 F.3d 156 (3d Cir.
2005).  This Court explained:

> Plaintiffs are correct that this Court cannot
> dismiss at this juncture based on the voluntary
> payment doctrine because facts exist under which
> plaintiffs could be relieved from its application.
> First, plaintiffs' payment may not have been
> voluntary because a payment is not voluntary when
> the plaintiff believed that the law which imposed
> it was not valid, but made the payment anyway.
> <u>N.J. State Bar Ass'n v. Berman</u>, [611 A.2d 1119,
> 1128 (N.J. Super. Ct. App. Div. 1992)].  Such
> situations generally arise when a plaintiff pays a
> fee that he believes is invalid, but pays it anyway
> so that he can continue to practice his profession
> or continue his business.  <u>See</u> <u>State Board of</u>
> <u>Dentistry</u>, [423 A.2d at 644].  This Court cannot
> decide on a motion to dismiss whether plaintiffs
> believed that the subrogation and reimbursement
> liens were invalid, but paid in order to continue
> their health insurance coverage.
> Second, the Court cannot now determine whether
> plaintiffs acted under a mistake of fact when they
> made the payments or whether defendants acted
> improperly in making their claims.

<u>Carducci</u>, 247 F. Supp. 2d at 620.

In the present action, the Court cannot decide at this
juncture whether Plaintiffs knew that mortgage fees were invalid
but paid them in order to avoid foreclosure and eviction, thereby
making the payments involuntary.  Likewise, the Court cannot
judge whether Plaintiffs made those payments without mistake of
facts.  The Court therefore declines to dismiss Plaintiffs'
claims under the voluntary payment rule, without prejudice to
Defendants Wells and MERS raising such an argument on a motion

for summary judgment.[4]

    2.  Absence of Injury

    Defendants Wells and MERS submit as an attachment to their
motion to dismiss evidence that Plaintiffs McTague received a
full refund for the fees they were allegedly improperly charged
and ask the Court to dismiss the McTagues' complaint because they
suffered no injury.  Defendants offer no argument to support this
Court's consideration of evidence outside the complaint, where
the evidence was not attached to the complaint and does not
include documents that form the basis of Plaintiffs' allegations
or are a matter of public record.  See Lum, 361 F.3d at 222 n.3.
The Court will not, therefore, consider any evidence that the
McTagues received a full refund,[5] though Defendants may raise
this potentially dispositive argument in a motion for summary

---

    [4] In their reply to Plaintiffs' sur-reply, Defendants Wells
and MERS raise for the first time the entire controversy
doctrine, suggesting that Plaintiffs should have raised their
objections to these fees in their foreclosure proceedings.  The
Court will not consider this argument, because it was not
presented in Defendants' motion to dismiss or reply and so
Plaintiffs had no opportunity to respond.  See Bayer AG v. Schein
Pharmaceutical, Inc., 129 F. Supp. 2d 705, 716 (D.N.J. 2001)
(argument raised for first time in reply must be stricken).

    [5] Wells and MERS assert that they issued a refund to Ms.
McTague in October, 2005, for $1,790.00, resulting in her payment
of a total of only $129.00 for attorneys' fees and costs for the
foreclosure proceeding, or less than the amount the McTagues
claim the Court Rules would have allow.  If discovery shows this
is correct, one would hope that appropriate admissions and
stipulations would be forthcoming without the necessity of
summary judgment practice.

judgment.

         3.    Statute of Limitations

     Defendants Wells and MERS attack the timeliness of Plaintiff
Rickenbach's claims on two fronts.  His contract claim, they
argue, is not subject to the sixteen year statute of limitations
for documents under seal, N.J. Stat. Ann. § 2A:14-4, but instead
is subject to the six year limitation for contract claims, N.J.
Stat. Ann. § 2A:14-1.  Applying the six year limitation to all of
his claims, Defendants argue that Plaintiff Rickenbach's claims
are untimely because he paid the allegedly improper fees more
than six years before bringing this action.  In support of this
argument, Defendants submit the check by which Rickenbach made
this payment.  The Court finds that the sixteen year statute of
limitations is applicable to Plaintiff Rickenbach's contract
claim, assuming that his mortgage and note were truly signed
"under seal," but will dismiss Plaintiff Rickenbach's other
claims as untimely.

     Plaintiffs assert that their contracts claims are governed
by the sixteen year statute of limitations set out in Section
2A:14-4, N.J. Stat. Ann., which reads in relevant part:

          Actions on lease, specialty, recognizance or award;
          16 years; effect of payments; action on instrument
          under  seal  brought  by  merchant  or  financial
          institution; 6 years

          Every action at law for rent or arrears of rent,
          founded upon a lease under seal, every action at
          law upon a single or penal bill under seal for the

> payment of money only, <u>upon an obligation under
> seal conditioned for the payment of money only</u>,
> upon a recognizance or upon an award under the
> hands and seals of arbitrators for the payment of
> money only <u>shall be commenced within 16 years next
> after the cause of any such action shall have
> accrued</u>. If, however, any payment is made on any
> such lease, specialty, recognizance or award within
> or after such period of 16 years, an action thereon
> may be commenced within 16 years next after such
> payment, and not thereafter.

N.J. Stat. Ann. § 2A:14-4 (emphasis added).  Defendants respond that the above provision only applies to actions brought "for the payment of money only," whereas Plaintiffs seek a refund of amounts they were allegedly overcharged.  Defendants ask the Court to apply the six year statute of limitations provided for in N.J. Stat. Ann. § 2A:14-1, even though that provision expressly states that it does not apply to documents under seal.

The Court finds that Defendants misinterpret Section 2A:14-4, because the phrase "for payment of money only" limits the "obligation" and not the "action at law."  The plain language of the provision leads to such a conclusion, for the clause "upon an obligation under seal conditioned for the payment of money only" is separate and apart from "every action at law."  If "for the payment of money only" qualified the cause of action, and not the instrument, there would be no need to repeat the phrase after each instrument.  If the New Jersey legislature meant "every action at law for the payment of money only upon a penal bill under seal or an obligation under seal," the legislature could

14

have so written.  It did not.

     The Court's reading of Section 2A:14-4 is compelled by the
New Jersey courts.  Section 2A:14-4 is an antiquated provision,
first construed in Elasser v. Haines, 18 A. 1095 (N.J. Sup. Ct.
1889) in its earlier form.  In Miller v. Bd. of Chosen
Freeholders, 91 A.2d 729, 735-37 (N.J. 1952) the New Jersey
Supreme Court adopted the Elasser construction, and the Court
finds this interpretation conclusive.  The question before the
Elasser and Miller courts was the meaning of "specialty" and
"obligation" as used in N.J. Rev. Stat. § 2:24-5, the predecessor
to Section 2A:14-4.[6]  The earlier provision applied to "every
action of debt . . . upon any obligation with condition for
payment of money only."  N.J. Rev. Stat. § 2:24-5.  The courts
held that "obligation" and "specialty" were synonymous for the

---

     [6] The earlier version of Section 2A:14-4 was found in N.J.
Rev. Stat. § 2:24-5 and read:

          That every action of debt, or covenant for rent, or
          arrearages of rent, founded upon any lease under
          seal, whether indented or poll, and every action of
          debt upon any single or penal bill for the payments
          of money, or upon any obligation with condition for
          the payment of money only, or upon any award, under
          the hands and seals of arbitrators, for the payment
          of money only, shall be commenced and sued within
          sixteen years next after the cause of such action
          shall have accrued, and not after; but if any
          payment shall have been made, on any such lease,
          specialty, or award, within or after . . .

Elasser, 18 A. at 1099 (quoting N.J. Rev. Stat. § 2:24-5)
(emphasis added).

purpose of the sixteen year statute of limitations, and were
"'made to express but a single class of instruments, those which
are under seal and stipulate for the payment of money.'"  Miller,
91 A.2d at 736 (quoting Elasser, 18 A. at 1100); see United
States v. Jacobs, 155 F. Supp. 182, 193-94 (D.N.J. 1957) ("[I]n
the case of Miller [] that court approved the conclusions of
Chief Justice Beasley in Elasser [] to the effect that the words
'obligation' and 'specialty,' as used in the statute of
limitations, import an instrument under seal for the payment of
money.").  The statute has since been amended to include the
terms "under seal," but the phrase "for payment of money only"
remains the same and continues to qualify the instrument, not the
cause of action.  See Miller, 91 A.2d at 736.  In addition, the
Court observes that while the original provision applied to
"every action of debt," the current provision, applicable to this
claim, applies broadly to "every action at law."  N.J. Stat. Ann.
§ 2A:14-4; N.J. Rev. Stat. § 2:24-5.  There being no argument
that the mortgages and notes at issue were for anything other
than payment of money, the Court will not dismiss Plaintiff
Rickenbach's breach of contract claim as untimely for it appears
that Section 2A:14-4 applies to that claim.  Defendants have
reserved the right to challenge Plaintiffs' allegation that the
mortgage and note were "under seal" and may raise this question
in a motion for summary judgment.

By contrast, Plaintiff Rickenbach's other causes of action, all parties agree, are subject to the six year statute of limitation in N.J. Stat. Ann. § 2A:14-1.[7]  The Amended Complaint alleges that Rickenbach paid the disputed fees "on or about December 26, 2001" and "on or about May 30, 2002," (Am. Compl. ¶¶ 18, 21), but Defendants submit the document by which Rickenbach made his final payment, a check dated April 9, 2002 with a notation "satisfy mtg," (Dzura Certification, Ex. 2).  Plaintiffs do not dispute the authenticity of this document, for they did not challenge it in either of their two opposition briefs or their sur-reply, and defend only the McTagues' claims (except for the contract claim, which Plaintiffs argue survives dismissal for

---

[7] Section 2A:14-1 reads:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

> This section shall not apply to any action for breach of any contract for sale governed by section 12A:2-725 of the New Jersey Statutes.

N.J. Stat. Ann. § 2A:14-1.

both Rickenbach and the McTagues).  The Court may therefore rely on this check, for it is undisputedly authentic and integral to Plaintiff Rickenbach's claims.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); Lum, 361 F.3d at 222 n.3 ("A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'") (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).  The check itself is not inconsistent with Rickenbach's allegation that he made his payment "on or about May 30, 2002," but even if it were the Court would rely on the undisputedly authentic document for the date of payment.  See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.").  It being evident that Plaintiff Rickenbach's cause of action accrued over six years before bringing suit, the Court will dismiss those claims subject to the six year statute of limitation -- negligence, breach of duty of good faith and fair dealing, unfair and deceptive assessment and collection of fees, and violations of the Fair Foreclosure Act, New Jersey State Court Rules, New Jersey

Consumer Fraud Act, and Truth-in-Consumer Contract, Warranty and

Notice Act -- as to Defendant Zucker and Defendants Wells and

MERS.

4.   <u>Unfair and Deceptive Assessment and Collection of Fees</u>

The Court agrees with Defendants that there is no cause of

action for "unfair and deceptive assessment and collection of

fees" under New Jersey law (and Plaintiffs have presented no

argument to the contrary).  Plaintiffs' allegations of fraud are

subsumed in Count VIII under the New Jersey Consumer Fraud Act

and so the Court will dismiss Count V for failure to state a

claim for which relief may be granted.

5.   <u>Fair Foreclosure Act</u>

Defendants argue, and the Court agrees, that there is no

private right of action under the Fair Foreclosure Act.  As Judge

Kugler recently explained under similar circumstances and in

support of his conclusion that the FFA does not provide a private

right of action:

> The policy behind the FFA is that "homeowners
> should be given every opportunity to pay their home
> mortgages, and thus keep their homes...." [N.J.
> Stat. Ann.] § 2A:50-53.   To that end, the FFA
> creates a variety of procedures by which a debtor
> can cure a default on a mortgage, including a
> provision that "limits the amount of attorneys'
> fees to be paid by a mortgagor who is curing a
> mortgage default to 'the amount permitted under the
> Rules Governing the Courts of the State of New
> Jersey.'" <u>In re Lipscomb</u>, No. 05-18722, 2006 WL
> 4452988, *5 (Bankr. D.N.J. 2006) (citing [N.J.
> Stat. Ann.] § 2A:50-57).  The FFA is essentially a

19

notice provision, which provides specific guidance
to residential mortgage lenders on the steps
necessary to foreclose. [N.J. Stat. Ann.] §
2A:50-56.

Whittingham v. Amended Mortgage Elec. Registration Servs., Inc.,
No. 06-3016, 2007 WL 1456196, at *5 (D.N.J. May 15, 2007).
Contrary to Plaintiffs' suggestion, the mere fact that the
legislature intended the FFA to protect homeowners by setting
forth notice requirements for foreclosure proceedings and
procedure to cure a default does not mean that the legislature
intended to provide homeowners the right to bring an independent
action (outside of the foreclosure proceeding) based on allegedly
improper attorneys' fees.  There is no evidence that the
legislature intended to create a private right of action
regarding excessive attorneys' fees through the FFA.  Id.  In the
absence of any evidence that the legislature intended to create a
private right of action, Plaintiffs cannot state a claim under
the FFA.  See Jalowiecki v. Levc, 440 A.2d 21, 25-26 (N.J. Super.
Ct. App. Div. 1981).

        6.  New Jersey Court Rules

    Plaintiffs similarly cannot state a claim under the New
Jersey Court Rules, and in particular under Rules 4:42-9(a)(4)
(governing attorneys' fees) or 4:42-10(a) (governing foreclosure
fees), because the rules do not provide a private right of
action.  Whittingham, 2007 WL 1456196, at *6; Kearny Barge Co.,
Inc. v. Global Ins. Co., 943 F. Supp. 441, 462 (D.N.J. 1996);

Leonardis v. Burns Intern. Sec. Services, Inc., 808 F. Supp.
1165, 1184-86 (D.N.J. 1992).  New Jersey Court Rules are rules of
procedure and do not provide substantive rights.  See N.J. Rule
4:1 ("The rules in Part IV [Rules Governing Civil Practice],
insofar as applicable, govern the practice and procedure of civil
actions in the Superior Court, Law and Chancery Divisions . .
.").  This is so because "the New Jersey Supreme Court has long
held that its power to create rules governing the courts of New
Jersey, as provided by Article VI, section 2, paragraph 6 of the
New Jersey State Constitution, is limited to matters of court
practice and procedure, and does not empower it to create
substantive law or rights."  Leonardis, 808 F. Supp. at 1185.
Courts have consequently found that "Rule 4:42-9 is a rule of
state court procedure and does not create an independent law
claim."  Kearny Barge, 943 F. Supp. at 462 (citing Leonardis, 808
F. Supp. at 1186); see First State Underwriters Agency of New
England Reinsurance Corp. v. Travelers Ins. Co, 803 F.2d 1308,
1315-16 (3d Cir. 1986) (holding that a conflict of law regarding
attorneys' fees is an issue of procedural law and so the forum
state's law on that issue should be applied).  Rule 4:42-10(a),
which sets of "fees allowable" in a foreclosure action, likewise
is a rule of state court procedure and does not create an
independent cause of action.  Whittingham, 2007 WL 1456196, at *6
(holding the neither Rule 4:42-10(a) nor 4:42-9(a)(4) create a

21

private right of action).  The Court will therefore dismiss
Plaintiffs' claim under the New Jersey Court Rules.

       7.   <u>Truth-in-Consumer Contract, Warranty and Notice
Act</u>

Defendants argue on reply[8] that Plaintiffs cannot state a
claim under the New Jersey Truth-in-Consumer Contract, Warranty
and Notice Act because the letter to the McTagues that included
the allegedly improper charges was sent by Defendant Zucker, as
the attorney for Defendants Wells and MERS, not Wells or MERS.
The Court rejects this argument.  Plaintiffs McTague allege that
Defendant Zucker represented Wells and MERS throughout the
foreclosure proceeding and mailed the payoff statement to the
McTagues "on behalf of MERS and WELLS."  (Am. Compl. ¶¶ 4, 28.)
Defendants Wells and MERS cannot escape liability for conduct of
their alleged agent.  The Court finds that Plaintiffs have
sufficiently alleged that they received "notice" from Wells and
MERS through their attorney agent Zucker and so the Court will
not dismiss their claim under the Truth-in-Consumer Contract

---

    [8] Though generally courts will not consider arguments raised
only on reply, <u>supra</u> note 3, in this circumstance Plaintiffs were
given an opportunity to file a sur-reply and thus had an
opportunity to respond to Defendants' argument, so the Court will
take note of Defendants' argument.  <u>See</u> <u>Bayer</u>, 129 F. Supp. at
716 (noting the rationale for striking arguments raised in the
first instance on reply is that generally a sur-reply is not
permitted and so non-moving party has no opportunity to respond).

Act.[9]

### B.   Defendant Zucker's Motion to Dismiss

Defendant Zucker asks the Court to dismiss all claims against the law firm by all plaintiffs.  As to all plaintiffs, Defendant Zucker argues that the two remaining counts brought against the law firm should be dismissed because Defendant Zucker is protected by New Jersey's common law litigation privilege. Further, according to Defendant Zucker, Plaintiffs have failed to state a claim for either of the two alleged torts.  Having dismissed all of Plaintiff Rickenbach's claims against Defendant

---

[9] The New Jersey Truth-in-Consumer Contract, Warranty and Notice Act provides in relevant part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.

N.J. Stat. Ann. § 56:12-15.  Defendants have not presented argument as to whether the payoff statement violated a "clearly established legal right" of the McTagues and the Court will not, sua sponte, take up this issue now.

Zucker as untimely, <u>see</u> Part III.B.3, the Court need not address Zucker's attacks on the merits of those claims.  The Court finds, as will be explained at length below, that Plaintiffs McTague's claims fail under the litigation privilege.  There Court therefore will grant Defendant Zucker's motion to dismiss in full.

> 1.   <u>Litigation Privilege</u>

Defendant Zucker argues that the McTagues base their claims against Defendant Zucker on "payoff statements" prepared and provided as part of the foreclosure proceedings against the various plaintiffs and so Zucker is protected by New Jersey's litigation privilege.  Plaintiffs respond by suggesting that the litigation privilege is limited to defamation actions, claims under 42 U.S.C. § 1983, and the New Jersey Law Against Discrimination.[10]  The Court finds Plaintiffs McTague's claims against Defendant Zucker are based solely on communications made for the purpose of litigation and thus fail under the litigation privilege.

_____

[10] Plaintiffs further argue that the privilege does not apply to claims under the Fair Debt Collection Practices Act ("FDCPA").  Plaintiffs, however, have not asserted claims under the Fair Debt Collection Practices Act in this action.  Moreover, in a recent case from this district, Judge Cavanaugh rejected just this argument under similar circumstances (and by the same counsel) where the plaintiffs did seek relief under the FDCPA. <u>Ogbin v. Fein, Such, Kahn & Shepard, P.C.</u>, No. 08-4138, 2009 WL 1587896, at *2-3 (D.N.J. June 1, 2009) (finding litigation privilege applies to claims under the FDCPA).

The litigation privilege has deep roots in the common law of New Jersey.  Loigman v. Twp. Comm. of Twp. of Middletown, 889 A.2d 426, 433 (N.J. 2006).  The privilege insures that "[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability."  Peterson v. Ballard, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996) (citing Erickson v Marsh & McLennon Co., Inc., 569 A.2d 793 (N.J. 1990)).  The privilege is expansive.  New Jersey courts "have extended the reach of the litigation privilege even to statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations."  Loigman, 889 A.2d at 438.  The underlying principle is to allow parties to such proceedings "unfettered expression critical to advancing the underlying government interest at stake in those settings."  Perterson, 679 A.2d at 659-60 (quoting Erickson, 569 A.2d at 805).  As such, there are just four elements of the privilege. It is applicable to

> any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

Hawkins v. Harris, 661 A.2d 284, 289 (N.J. 1995).  Whether the privilege applies in a particular case is a question of law. Peterson, 679 A.2d at 664.

25

Contrary to Plaintiffs' suggestion, the litigation privilege is well-established and broadly applicable.  Loigman, 889 A.2d at 435-37.  "In New Jersey, the litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims."  Id. at 436.  As the New Jersey Supreme Court has long noted, "If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label."  Rainier's Dairies v. Raritan Valley Farms, Inc., 117 A.2d 889, 895 (N.J. 1955), cited with approval by Loigman, 889 A.2d at 436.  Consequently, New Jersey courts have applied the litigation privilege to intentional and negligent infliction of emotional distress, see, e.g. Rabinowitz v. Wahrenberger, 966 A.2d 1091 (N.J. Super. Ct. App. Div. 2009), material misrepresentation, Commercial Ins. Co. of Newark v. Steiger, 928 A.2d 126 (N.J. Super. Ct. App. Div. 2007), and negligent misrepresentation, fraud, and malicious interference with prospective economic advantage, Ruberton v. Gabage, 654 A.2d 1002 (N.J. Super. Ct. App. Div. 1995).  In Loigman, the New Jersey Supreme Court found it significant that "[i]n many jurisdictions, '[t]he spectrum of legal theories to which the privilege has been applied includes negligence, breach of confidentiality, abuse of

26

process, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, civil conspiracy, interference with contractual or advantageous business relations, [and] fraud.'"  889 A.2d at 436 (quoting Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers, 31 Pepp. L. Rev. 915, 928 (2004)).

Far from being an exception, the litigation privilege is applicable as a general rule.  When considering whether a defendant in a New Jersey Law Against Discrimination ("LAD") claim could avail himself of its protections, the New Jersey Appellate Division looked to whether the New Jersey statute had "abrogated the litigation privilege."  Peterson, 679 A.2d at 659, cited with approval by Loigman, 889 A.2d at 438.  The court ultimately concluded that the LAD did not abrogate the well-established privilege, noting that "implied abrogation of the litigation privilege is not favored."  Id. at 662.  Recently, in Loigman the New Jersey Supreme Court held that the common law privilege is applicable even to a federal claim under 42 U.S.C. § 1983.  889 A.2d at 434-37.  In fact, it appears under New Jersey law that the only claim from which defendants expressly cannot seek protection through the litigation privilege is malicious prosecution.  Loigman, 889 A.2d at 436 n.4.

In light of the preceeding discussion, the Court has no difficulty in finding that the litigation privilege may be

27

applied to tort claims of negligence and breach of a duty of good faith and fair dealing.  The Court must discern whether, taking the allegations as true and construing them in the light most favorable to Plaintiffs, those claims are barred by the litigation privilege.  The Court will address each element in turn.

Plaintiffs McTague's allegations against Defendant Zucker focus entirely on the payoff statement Defendant Zucker provided the McTagues following the commencement of foreclosure proceedings.  That letter was prepared in response to a request made by counsel for McTagues as a means to facilitate dismissal of the foreclosure action.  The Court finds that this letter was a communication made in quasi-judicial proceedings and so meets the first element of the litigation privilege.  "Absolute immunity is not limited to what a person may say under oath while on the witness stand; it extends to all statements or communications in connection with the judicial proceeding." Ruberton, 654 A.2d at 1006.  New Jersey courts have recognized that statements made during an interview of a witness in anticipation of trial and during a settlement conference are privileged communications.  Loigman, 889 A.2d at 438.  Pre-litigation "demand letters" seeking resolution of a dispute before filing suit are likewise protected.  Waterloov Gutter Protection Sys. Co., Inc. v. Absolute Gutter, 64 F. Supp. 2d 398,

415 (D.N.J. 1999) (citing <u>Kanengiser v. Kanengiser</u>, 590 A.2d
1223, 1230 (N.J. Super. Ct. Law Div. 1991)).  In the present
case, Defendant Zucker's alleged negligence and breach of good
faith stem from a letter prepared in response to a request by
Plaintiffs' counsel and on behalf of Defendants Well and MERS,
all parties in a judicial proceeding.  The first element is met.

The next three elements quickly follow.  Defendant Zucker
represented Defendants Wells and MERS in judicial proceedings,
meeting the second prong.  The communication was made by
litigants in the judicial proceedings.  <u>See Hawkins</u>, 661 A.2d at
289.  The purpose of the letter was to resolve the foreclosure
action, meeting the third prong.  The letter was prepared to
achieve the object of the litigation.  <u>See id.</u>  And the letter
was prepared in response to a request from the McTagues' counsel
in those proceedings in order to resolve those proceedings, thus
meeting the fourth prong.  The letter had a close connection to
the judicial action.  <u>See id.</u>  Defendant Zucker is immune from
suit based on the payoff statement it sent on behalf of parties
involved in litigation.  <u>See Steiger</u>, 928 A.2d at 131-32 (claim
that expert witness materially misrepresented facts during
testimony barred by litigation privilege).

In a very recent case, Judge Cavanaugh of this district
dismissed nearly identical claims on the grounds that they were
barred by the litigation privilege.  <u>Ogbin v. Fein, Such, Kahn &</u>

Shepard, P.C., No. 08-4138, 2009 WL 1587896 (D.N.J. June 1,
2009).  The plaintiffs in Ogbin brought suit after receiving two
"payoff letters" sent during plaintiff's foreclosure proceedings
from a law firm on behalf of plaintiff's mortgage provider and in
response to the request of plaintiff's counsel.  Id. at *1.  The
Ogbin plaintiffs sued the law firm for negligence, intentional
misrepresentation, and for violating the Federal Debt Collection
Practices Act.  Id. at *1-2.  Judge Cavanaugh dismissed all
claims against the law firm finding that the payoff letters were
subject to the litigation privilege and all of the plaintiffs'
claims arose from and relied upon those letters and should be
dismissed.  Id. at *2-3.

Plaintiffs McTague's claims against Defendant Zucker are
similarly barred by the litigation privilege.  The McTagues'
allegations against Defendant Zucker arise solely from the payoff
statement Zucker sent to their counsel.  Plaintiffs' broad
accusations of Defendants' misconduct relating to "defaulting
borrowers of residential mortgages" in general cannot save the
McTagues' claim against Defendant Zucker in particular.
Plaintiffs must state a claim for which relief may be granted,
and cannot rely on injury to a proposed class.  See Winer Family
Trust v. Queen, 503 F.3d 319, 325-26 (3d Cir. 2007) ("A potential
class representative must demonstrate individual standing
vis-as-vis [sic] the defendant; he cannot acquire such standing

30

merely by virtue of bringing a class action.") (quoting <u>Fallick
v. Nationwide Mut. Ins. Co.</u>, 162 F.3d 410, 423 (6th Cir. 1998)).
The Court will grant Defendant Zucker's motion to dismiss
Plaintiffs McTague's claims.[11]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant
Zucker's motion to dismiss in full, and Defendants Wells' and
MERS's motion to dismiss in part.  As to Plaintiff Rickenbach,
the Court will dismiss all but his contract claim (Count I)
against Defendant Wells and MERS.  As to Plaintiffs McTague, the
Court will dismiss their claims for unfair and deceptive
assessment and collection of fees (Count V), for violations of
the Fair Foreclosure Act (Count VI), and for violations of the
New Jersey Court Rules (Count VII).  In light of Plaintiffs'
voluntary dismissal of their unjust enrichment claims (Count IV),
the Court will likewise dismiss those claims.  Plaintiffs McTague
may continue to pursue their claims for breach of contract (Count
I), negligence (Count II), breach of the implied duty of good
faith and fair dealing (Count IV), for violations of the New

---

[11] The Court notes that Defendants Wells and MERS may also
be protected from the McTagues' claims under the litigation
privilege.  <u>See</u> <u>Loigman</u>, 889 A.2d at 439 (holding that a party is
entitled to the same litigation privilege as its representative).
The Court will not, however, decide this matter as it was not
raised by Wells or MERS, was not briefed by the parties, and
involves application of the privilege to statutory claims not
brought against Defendant Zucker.

Jersey Consumer Fraud Act (Count VIII), and for violations of the New Jersey Truth-in-Consumer Contract, Warrant and Notice Act (Count IX) against Defendants Wells and MERS only.  The above-recited dismissals are with prejudice for any attempt at amendment would be futile.


**June 22, 2009**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           United States District Judge