IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD RICKENBACH, JACK MCTAGUE as executor of the estate of James McTague, and HATTIE MCTAGUE by and through her attorney, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>        Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 08-2687 (JBS/KMW)<br><br>**<u>OPINION</u>** |

APPEARANCES:

Lewis G. Adler, Esq.
LAW OFFICE OF LEWIS ADLER
26 Newton Avenue
Woodbury, NJ 08096
    Attorneys for Plaintiffs Edward Rickenbach, Jack McTague and
    Hattie McTague

Diane A. Bettino, Esq.
Mark S. Melodia, Esq.
REED SMITH, LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08540
    Attorneys for Defendants Wells Fargo, N.A. and Mortgage
    Electronic Registration Systems, Inc.

**SIMANDLE**, District Judge:

    This matter is before the Court on a motion for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P., brought by the defendants Wells Fargo, N.A. ("Wells") and Mortgage Electronic Registration Systems, Inc. ("MERS"), (collectively,

"Defendants") [Docket Item 38]. Defendants' motion follows on the heals of this Court's June 22, 2009 Opinion and Order which granted in part and denied in part Defendants' motion to dismiss pursuant to Rule 12(b)(6). <u>Rickenbach v. Wells Fargo Bank, N.A.</u>, 635 F. Supp. 2d 389 (D.N.J. 2009). In that same opinion, the Court dismissed all claims against Attorney Defendants Zucker, Goldberg, and Ackerman, finding that Plaintiffs' claims, which arise out of payoff statements that included allegedly excessive and illegal mortgage processing fees, were barred by New Jersey's litigation privilege. For the reasons explained below, and consistent with "the law of the case" doctrine, the Court will grant Defendants' motion for judgment on the pleadings as to claims brought by Plaintiffs McTague, but deny Defendants' motion as to Plaintiff Rickenbach's remaining breach of contract claim.

**I.   BACKGROUND**

    **A.   Factual Allegations**

The Court has already set forth the relevant factual allegations at length, <u>Rickenbach</u>, 635 F. Supp. 2d at 392-93, but will nevertheless restate the relevant facts as necessary to assist the reader.

        1.   <u>Plaintiff Edward Rickenbach</u>

Plaintiff Edward Rickenbach ("Plaintiff Rickenbach") executed the mortgage and note at issue in this case under seal on June 26, 1996. (Am. Compl. ¶ 15.) On November 11, 2001,

Defendant Zucker filed a foreclosure proceeding on behalf of Defendant Wells against Plaintiff Rickenbach.  (Id. ¶ 16.)  In response, Plaintiff Rickenbach sought and received reinstatement of his mortgage, which occurred on or about December 26, 2001.  (Id. ¶¶ 17-18.)  The foreclosure action and lis pendens were dismissed.  (Id. ¶ 19.)  Plaintiff Rickenbach then requested a statement of the amount needed to satisfy his mortgage along with any fees ("payoff statement"), so that he could refinance his home with a new mortgage company.  (Id. ¶ 20.)  According to the Amended Complaint, "on or about May 30, 2002," Plaintiff Rickenbach paid his remaining mortgage in full.  (Id. ¶ 21.)  The check for that payment is dated April 9, 2002.  (Dzura Certification, Ex. 2.)

According to Plaintiffs, the reinstatement and ultimate satisfaction of Plaintiff Rickenbach's mortgage "were improperly calculated as [] Defendant Wells included charges which were in excess of the amounts allowed either pursuant to the terms of the note and mortgage or New Jersey law."  (Id. ¶ 22.)  Specifically, Plaintiff Rickenbach alleges that the fee charged to him included attorneys fees and costs for an entire foreclosure proceeding, despite the termination of foreclosure proceedings.  (Id. ¶ 33(a).)

## 2. Plaintiffs McTague

On June 6, 1976, Plaintiff Hattie McTague and her late husband James McTague, whose estate is now represented by Jack McTague, (collectively, "Plaintiffs McTague") executed their mortgage and note under seal. (Id. ¶ 23.) On or about March, 2005, Defendant Zucker filed a foreclosure proceeding on behalf of Defendants MERS and Wells, the servicer of the loan for Defendant MERS, against Plaintiffs McTague. (Id. ¶¶ 25-26.) After receiving the foreclosure complaint, counsel for Plaintiffs McTague requested a payoff statement for the mortgage. (Id. ¶ 27.) According to the Amended Complaint, Defendant Zucker, on behalf of Defendants MERS and Wells, provided Plaintiffs McTague with a statement dated June 7, 2007 in the amount of $7,061.28, of which $910.00 was for attorney fees and $1,009.00 was for costs. (Id. ¶¶ 28, 30.) The June 7, 2007 date appears to be incorrect, however, because attached to the Amended Complaint is the actual payoff letter from Defendant Zucker, and it is dated March 11, 2005.[1] (Am. Compl. Ex. A.) That letter explains "the amounts required to reinstate and payoff our client's mortgage

---

[1] In addition, the actual payoff statement includes slightly different numbers, such that the total was $9,831.42, but the portions for attorney fees and costs are correctly listed in the Amended Complaint ($1009.00 and $910.00, respectively). (Am. Compl. Ex. A.) The Court notes that, even on a motion to dismiss, it is appropriate to rely on exhibits attached to a complaint. Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

4

and for dismissal of the foreclosure action." (Id.) Defendant Wells participated in the preparation of that statement. (Am. Compl. ¶ 29.) On or about April 21, 2005, Plaintiffs McTague paid the sums demanded in full and Defendants dismissed the foreclosure action and discharged the mortgage. (Id. ¶ 31-32.) Plaintiffs McTague allege that under New Jersey Court Rules, Defendants could charge no more than $177.13 for attorney fees. (Id. ¶ 33(a).)

### B.     Procedural History

On May 30, 2008, Plaintiffs brought this putative class action against Defendant Wells. On August 15, 2008, Plaintiffs filed their Amended Complaint against Defendant Wells, along with Defendants MERS and Zucker. The Amended Complaint set forth the following claims: breach of contract against Defendant Wells (Count I); negligence against all Defendants (Count II); breach of duty of good faith and fair dealing against all Defendants (Count III); unjust enrichment against all Defendants (Court IV); unfair and deceptive assessment and collection of fees against Defendants Wells and MERS (Count V); violations of the Fair Foreclosure Act against Defendants Wells and MERS (Count VI); violations of the New Jersey State Court Rules against Defendants Wells and MERS (Count VII); violations of the New Jersey Consumer Fraud Act ("CFA") against Defendants Wells and MERS (Count VIII); and violations of the New Jersey Truth-In-Consumer Contract,

Warranty, and Notice Act ("TCCWNA") against Defendants Wells and MERS (Count IX).  Plaintiffs also named various John Doe parties to the action (Count X).[2]

All defendants filed motions motions to dismiss and on June 22, 2009, the Court granted Defendant Zucker's motion and granted in part and denied in part the motion of Defendants Wells and MERS.  Rickenbach, 635 F. Supp. 2d at 394-404.  As a result of that opinion, Plaintiff Rickenbach's contract claim against Defendants Wells and MERS survived dismissal, while the Court permitted Plaintiffs McTague to pursue their claims for breach of contract, negligence, breach of an implied duty of good faith and fair dealing, and violations of the New Jersey Consumer Fraud Act and the New Jersey Truth-In-Consumer Contract, Warranty, and Notice Act against Defendants Wells and MERS only.  Plaintiffs did not file a motion to reconsider that decision.

**II.  DISCUSSION**

**A.  Standard of Review**

Though brought as a motion for judgment on the pleadings pursuant to Rule 12(c), the same standard of review for a Rule 12(b)(6) motion applies.  Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  Consequently, the Court must "accept all factual allegations as true, construe the complaint

---

[2] Though listed among the various other causes of action, Count X is not a cause of action, but instead lists other potential unnamed defendants to Plaintiffs' suit.

6

in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1950.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. [] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with

7

its facts.  See Phillips, 515 F.3d at 234-35.
Fowler, 578 F.3d at 210-11.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

### B. Litigation Privilege

Defendants ask the Court to dismiss all of Plaintiffs McTague's claims and any claim Plaintiff Rickenbach might have arising out of statements issued by Defendants as part of foreclosure proceedings.  Defendants note that the Court has already found the litigation privilege applicable to Plaintiffs McTague's claims against Defendant Zucker and so, Defendants argue, they too are entitled to the protection given to their attorneys.  Defendants further recognize, however, that Plaintiff Rickenbach's claims based on the payoff statement issued after foreclosure proceedings had concluded are not subject to the litigation privilege and so do not seek dismissal of such claims on this ground.  Plaintiffs respond that the litigation privilege applies only to defamation claims, that the privilege should only be applied to attorneys and not clients, that the privilege does not apply to the CFA, the TCCWNA, or contract claims, and finally that Plaintiffs' claims arise not solely from the payoff

8

statements.  As the Court will explain, Plaintiffs' arguments lack merit and cannot overcome the current law of the case, under which the litigation privilege applies to the full scope of Plaintiffs McTague's claims.

    1.   June 22, 2009 Opinion

Many of the issues raised in Defendants' motion and Plaintiffs' opposition were decided in this Court's June 22, 2009 Opinion, where the Court found that the litigation privilege barred all claims by Plaintiffs McTague against Defendant Zucker.  Rickenbach, 635 F. Supp. 2d at 401-03.  In that opinion, the Court, relying on well-established New Jersey jurisprudence, found that the litigation privilege has "deep roots in the common law of New Jersey" and is intended to "allow parties to [judicial and quasi-judicial] proceedings 'unfettered expression critical to advancing the underling government interest at stake in those settings.'"  Id. at 401.[3]  The Court further found that the privilege is not limited to defamation actions, but instead is broadly applicable to a wide range of suits, including claims of fraud, and violations of the New Jersey Law Against Discrimination and civil rights suits pursuant to 42 U.S.C. §

---

[3] Citing Loigman v. Twp. Comm. of Twp. of Middletown, 889 A.2d 426, 433 (N.J. 2006) and quoting Peterson v. Ballard, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996).

9

1983. Id. at 401-02.[4] The Court observed that the privilege is "expansive" and has been applied to statements made by attorneys outside the courtroom, "'such as in attorney interviews and settlement negotiations.'" Id. at 401 (quoting Loigman, 889 A.2d at 438.) "Far from being an exception," the Court found, "the litigation privilege is applicable as a general rule." Id. at 402. Consequently, the Court concluded that the privilege applied to the McTagues' negligence and breach of good faith claims against Zucker. Id.

The Court set forth the four elements of the litigation privilege. The privilege is applicable to:

> any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

Id. at 401 (quoting Hawkins v. Harris, 661 A.2d 284, 289 (N.J. 1995)). The Court then found that the McTagues' claims against Defendant Zucker met each element of the privilege. The payoff statements were prepared to during foreclosure proceedings, by parties to those proceedings, in order to resolve the foreclosure process and prepared at the request of the McTagues' counsel in those proceedings. Id. at 402-03. The Court concluded that

---

[4] Citing, inter alia, Loigman, 889 A.2d at 435-37, Rainier's Dairies v. Raritan Valley Farms, Inc., 117 A.2d 889, 895 (N.J. 1955), Peterson, 679 A.2d at 659, and Ruberton v. Gabage, 654 A.2d 1002 (N.J. Super. Ct. App. Div. 1995).

Plaintiffs McTague could not bring suit against Defendant Zucker based on the payoff statements prepared to resolve foreclosure proceedings and so dismissed those claims. Id. at 403.

The Court did not address whether Defendants Wells and MERS were similarly entitled to protection under the litigation privilege, because these defendants had not sought that protection. Id. at 403 n.11. The Court noted, however, that Defendants might be entitled to the same protection, citing Loigman, 889 A.2d at 439. Id.

   2. Application of the Litigation Privilege to Plaintiffs' Claims against Defendants

The question presently before the Court is whether Defendants Wells and MERS can be held liable for the allegedly inappropriate figures included in the payoff statements prepared to resolve foreclosure proceedings. Though not directly resolved in the Court's June 22, 2009 Opinion, the Court is nevertheless bound by that opinion as "the law of the case."

> The "law of the case ... doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 [] (1983). The "doctrine does not restrict a court's power but rather governs its exercise of discretion." Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, 123 F.3d 111, 116 (3d Cir. 1997) (citations omitted). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous

>     and would make a manifest injustice." Christianson
>     v. Colt Indus. Operating Corp., 486 U.S. 800, 816
>     [] (1988) (citing Arizona, 460 U.S. at 618 n. 8[]).

Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191, 207 (3d Cir. 2010).

The Court finds no extraordinary circumstances that call for the Court to reject its prior holdings nor will it permit Plaintiffs to succeed on arguments already raised and rejected in the Court's June 22, 2009 Opinion.  The Court has already found, relying on controlling precedent from the New Jersey Supreme Court, that the litigation privilege is not limited to defamation actions and instead is "broadly applicable."[5]  Rickenbach, 635 F. Supp. 2d at 401.  The Court has applied the privilege to the negligence and breach of duty of good faith and fair dealing claims of Plaintiffs McTague.  Id. at 402.  The Court has already held that Plaintiffs McTague's claims arising out of payoff statements made during foreclosure proceedings met each of the elements of the litigation privilege.[6]  Id. at 402-03.  These

---

[5] Plaintiffs, with the Court's permission, submitted a sur-reply in which they cite to an unpublished New Jersey Appellate Division decision for the principle that the litigation privilege applies only to defamation actions. Nunez v. Pachman, A-1851-08T3, 2009 WL 3460420 (N.J. Super. Ct. App. Div. Oct. 14, 2009).  The Appellate Division subsequently granted the defendants' motion to reconsider Nunez, stating "we erroneously concluded the litigation privilege bars only defamation claims. The privilege extends further than that." 2009 WL 5084084, at *5 n.8 (N.J. Super. Ct. App. Div. Dec. 29, 2009).

[6] Plaintiffs attempt to suggest that there is some claim independent from the payoff statements that should survive

12

findings are binding on Plaintiffs' claims against Defendants Wells and MERS because under New Jersey law a party "is entitled to the same protection under the litigation privilege as [] its representative." Loigman, 889 A.2d at 439 (citing Briscoe v. LaHue, 460 U.S. 325, 335 (1983) and Hawkins, 661 A.2d at 288).

Plaintiffs do present additional claims against Wells and MERS, and so the Court must separately determine whether Defendants are similarly entitled to protection from the CFA, the TCCWNA, and breach of contract. Though the New Jersey Supreme Court has not applied the litigation privilege to these claims, the Court predicts that the New Jersey court will find the privilege applicable to all three claims, to be discussed below.

As to Plaintiffs' breach of contract claims, though the New Jersey courts have not addressed this issue, the Court is persuaded that New Jersey is likely to follow the path of California, because New Jersey has borrowed its litigation privilege jurisprudence from that state. See Hawkins, 661 A.2d at 289 (adopting the four elements of the litigation privilege directly from the California Supreme Court); Waterloov Gutter Prot. Sys. Co., Inc. v. Absolute Gutter Prot., L.L.C., 64 F. Supp. 2d 398, 416 (1999) (looking to California law on a question

---

without the payoff statements. If this is true, Plaintiffs have not included those allegations in their amended complaint. The Court is bound by the allegations in the amended complaint and Plaintiffs' claims arise solely from alleged miscalculations in the payoff statements.

regarding the litigation privilege undecided by New Jersey courts, because New Jersey courts often look to California law regarding the privilege). Under California law, the litigation privilege will apply to contract claims if "its application furthers the policies underlying the privilege." Whitty v. First Nationwide Mortgage Corp., No. 05-1021, 2007 WL 628033, at *9 (S.D. Cal. Feb. 26, 2007). The purpose of the litigation privilege is to permit "unfettered expression" in the course of judicial proceedings. Rickenbach, 635 F. Supp. 2d at 401 (quoting Peterson, 679 A.2d at 659-60). Plaintiffs' breach of contract claim arises from the identical facts that form the basis of all of Plaintiffs' other claims and the Court sees no reason to distinguish between this contract claim and the myriad other claims. Assuming that Defendants did include fees in the payoff statements that were not permitted by contract, Defendants' alleged misstatements in the course of settlement are "absolutely privileged and immune from liability." See Peterson, 679 A.2d at 659.

    The Court similarly finds that neither the CFA nor the TCCWNA abrogated the common law litigation privilege. Though also unaddressed by the New Jersey courts, the Court finds that the New Jersey Supreme Court, which has already applied the privilege to § 1983 claims, is likely to find that neither consumer fraud statute abrogated the privilege. In Loigman, the

14

New Jersey Supreme Court noted that "[t]he privilege has deep roots in the common law, dating back to medieval England," and "has long been embedded in New Jersey's jurisprudence." 889 A.2d at 434-35. Thus it was firmly in place in 1960, when the CFA was enacted, and in 1982 when the TCCNWA became law. "In the absence of a clear manifestation to the contrary, [the Court] shall not impute to the Legislature an intention to change established law." State v. Dalglish, 432 A.2d 74, 79 (N.J. 1981); Gonzalez v. Bd. of Educ. of Elizabeth Sch. Dist., 738 A.2d 974, 978 (N.J. Super. Ct. App. Div. 1999). Far from a clear manifestation of intent to abandon the ancient litigation privilege, both statutes indicate that the legislature did not intend to break with the common law. See N.J. Stat. Ann. § 56:8-2.13 ("The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition."); § 56:12-18 (same).[7] The Court finds nothing in either statute to suggest that the

---

[7] Plaintiffs' reliance on Bosland v. Warnock Dodge, Inc., 964 A.2d 741 (N.J. 2009) is misguided. While Bosland does explore the intent of the CFA to expand protections for New Jersey consumers, the question before the Bosland court was whether the CFA required a consumer to demand a refund before bringing litigation (the court held it did not), and not whether the statute abrogated long-held common law privileges.

legislature intended to abolish the litigation privilege and so finds that the litigation privilege applies to claims under the CFA and the TCCNWA.  See Peterson, 679 A.2d at 662 ("[I]mplied abrogation of the litigation privilege is not favored.").

Therefore, consistent with the Court's previous determination that Plaintiffs' claims arising out of statements prepared to resolve foreclosure proceedings meet the elements of New Jersey's litigation privilege, Rickenbach, 635 F. Supp. 2d at 402-03, and the Court's conclusion that the litigation privilege applies to all of Plaintiffs' claims against Defendants, both common law and statutory, the Court will grant Defendants' judgment on pleadings as to all claims by Plaintiffs McTague and any claims by Plaintiff Rickenbach that arise from reinstatement statements made to resolve the foreclosure proceedings against him.  Plaintiff Rickenbach's claims arising from the payoff statement provided after the conclusion of foreclosure proceedings will be addressed below.

### C.   Breach of Contract

Defendants ask the Court to dismiss Plaintiff Rickenbach's remaining breach of contract claim because, they assert, it is not plausible.  In support of this position, Defendants submit the subsequent payoff statement, which does not on its face indicate any charges for attorneys' fees or the cost of foreclosure proceedings.  The Court cannot declare as a matter of

law, however, that the fees listed on the payoff statement were properly calculated and permitted under the terms of the note and the mortgage.  The Court has no way of confirming that the statement includes an accurate accounting of the amount due and was not a means for disguising fees that violated Plaintiff Rickenbach's contract with Defendants.  Plaintiff has alleged the existence of a valid contract, that Defendants breached the terms of the contract, that Rickenbach performed his obligations under the contract, and that he was injured as a result of defendant's breach.  See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (setting out the elements for a breach of contract claim under New Jersey law).  The Court will not dismiss this properly plead claim as a matter of law, though such dispute might be raised on summary judgment.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for judgment on the pleadings except that Plaintiff Rickenbach may continue to pursue his breach of contract claim arising out of the ultimate payoff statement.  The accompanying Order shall be entered.


**March 8, 2010**                                    **s/ Jerome B. Simandle**
Date                                                 JEROME B. SIMANDLE
                                                     United States District Judge